# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **APRIL HOLYFIELD o/b/o** } <br> **D.H.,** } <br> } <br> **Plaintiff,** } <br> } <br> **v.** } <br> } <br> **MICHAEL J. ASTRUE,** } <br> **Commissioner of Social Security,** } <br> } <br> **Defendant.** } | **Case No.: 3:08-CV-834-JHH** |

## <u>MEMORANDUM OPINION</u>

Plaintiff April Holyfield (hereinafter "Plaintiff"), on behalf of her minor child D.H. (hereinafter "Claimant"), brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), and Section 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application on behalf of Claimant for Child Supplemental Security Income ("child SSI") under Title XVI of the Social Security Act.

## I.      Proceedings Below

Plaintiff protectively filed an application for child SSI on behalf of her daughter on January 12, 2004, alleging a disability onset date of December 6, 1995, which was later amended to January 12, 2004.  (R. 59; 426G; 67).  On April 30, 2004, Plaintiff's application was denied initially.  (R. 43-45; 426G).  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), which was held on June 14, 2005, in Florence, Alabama. (R. 407-26).

In the August 11, 2005 decision, the ALJ determined that Claimant was not disabled within the meaning of the Social Security Act and was thus not eligible for child SSI benefits.  (R. 11-31;

426G).  After Plaintiff timely requested review of that decision, the Appeals Council denied Plaintiff's request on February 3, 2006.  (R. 5-7).

Thereafter, Plaintiff sought judicial review of the decision to deny benefits to Claimant by filing an action in this court on March 3, 2006. *See Holyfield v. Social Security Administration, Commissioner*, 3:06-cv-444-RDP.  On June 5, 2007, after briefing was complete, the Honorable R. David Proctor reversed and remanded the decision of the ALJ, with specific instructions as follows:

> [T]he ALJ is instructed to determine whether Claimant meets the "adaptive functioning" requirement of Listing 112.05(D) and whether her ADHD, Soto's Syndrome, arthralgia, or other diagnoses properly qualify as some other "physical or mental impairment imposing an additional and significant limitation of function" under that same listing's requirement, such that she should be determined to be presumptively disabled due to mental retardation under Listing 112.05(D).

*Holyfield v. Social Security Administration, Commissioner*, 3:06-cv-444-RDP)(Doc. # 14, at 11).

Following the Appeals Council's order of remand on June 22, 2007, (R. 426G; 427-28A), the ALJ conducted a remand hearing on October 22, 2007, (R. 490-509).  Thereafter, on December 7, 2007, the ALJ again determined that Claimant was not eligible for child SSI benefits.  (R. 426D-26U).  A request for review was filed, and after the Appeals Council declined jurisdiction on April 10, 2008, (R. 426A-26C), that decision became the final decision of the Commissioner, and therefore, a proper subject of this court's review.

## II.    Claimant's Disability Allegations

At the time of the first ALJ decision, Claimant was nine years old and had just completed the third grade.  (R. 411).  By the time of the most recent ALJ decision on remand, Claimant was twelve years old.  (R. 426J).  Plaintiff alleges, and the ALJ found in both decisions, that Claimant suffers from Soto's Syndrome, attention deficit hyperactivity disorder ("ADHD"), and borderline intellectual

functioning.  (R. 127; 426J, at Finding No. 3).  According to Plaintiff, due to these problems, Claimant's environment at home and at school have been adversely affected.  (R. 127).

During the initial hearing in June 2005, Plaintiff testified that Soto's Syndrome led to Claimant having difficulty using her hands, mood swings, slow learning abilities, abnormally large hands and feet with elongated fingers and toes, and attention deficits.  (R. 15; 426L).  Plaintiff further testified that Claimant's condition made her "awkward" and led to difficulties in throwing a ball and making a fist.  (R. 15; 426L).  Nevertheless, Plaintiff reported that Claimant could walk and run "okay," albeit with poor coordination.  (R. 426L).  With respect to Claimant's schooling, a special education teacher assisted her during classes because of her ADHD, although Plaintiff noted that Claimant's ADHD now has been properly controlled with medication.  (R. 15-16; 426L).

At the remand hearing in October 2007, Plaintiff testified that Claimant has juvenile arthritis in her hands which affects her handwriting and necessitates the use of ice packs at night to ease swelling.  (R. 426M).  She also testified that Claimant experiences problems with comprehension, has behavioral problems, and is aggressive and depressed.  (R. 426M).

## III.    ALJ Decision

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the "Act"), which amended the statutory standard for determining child SSI.  *See* P.L. No. 104-193, 110 Stat. 2105.  The revised standard provides:

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

3

42 U.S.C. § 1382c(a)(3)(C)(I).  On September 11, 2000, the Social Security Administration published final rules implementing the Act, which became effective on January 2, 2001.  65 Fed. Reg. 5471.  Consistent with Congressional intent, those regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level severity."  *See* 20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a); 20 C.F.R. pt. 404, subpt. P, app. 1.

The sequential evaluation process for determining child disability consists of three parts.  First, the ALJ determines whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(a).  Second, if the child is not engaged in substantial gainful activity, the ALJ determines whether the child suffers from a severe impairment or combination of impairments.  *Id*.  An impairment or combination of impairments is "severe" if it causes more than minimal functional limitations.  20 C.F.R. § 416.924(c).  Finally, if the child does suffer from a severe impairment or combination of impairments, the ALJ must determine whether the child's impairments are of listing-level severity, *i.e.*, whether they meet, medically equal, or functionally equal an impairment listed under Appendix I to Subpart P of Part 404 (the "Listings").  20 C.F.R. § 416.924(a); *Shinn o/b/o Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004).

To be functionally equivalent,  the child's impairment or combination of impairments must cause either "marked" limitations[1] in two broad categories of functioning, which are referred to as

---

[1] The ALJ will find that an individual has a "marked" limitation in a broad category of functioning when a child's impairment(s) "interferes seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. 916.926a(e)(2). A marked limitation is "more than moderate" but "less than extreme." *Id.* "It is the equivalent of functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*

4

"domains," or "extreme" limitation[2] in one domain.  20 C.F.R. § 416.926a(a).  The listed domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(I)-(vi).

The ALJ found that Claimant has never engaged in substantial gainful activity.  (R. 426J, at Finding No. 2).  Based upon the medical evidence presented, the ALJ concluded that Claimant has the impairments of Soto's Syndrome, ADHD, and borderline intellectual functioning, the combination of which is "severe" as defined by the Social Security Act.  (R. 426J, at Finding No. 3). Nonetheless, the ALJ determined that Claimant's impairments neither meet, medically equal, nor functionally equal the requirements for any impairment in the Listings.  (R. 426J-K, at Findings No. 4 and 5).

According to the ALJ, Claimant's and/or her mother's subjective complaints concerning the intensity, persistence, and limiting effects of her impairments and their impact on her ability to function are not entirely credible due to the degree of inconsistency with the medical evidence as well as other evidence in the record and Claimant's and/or her mother's own statements.  (R. 426Q, at Finding No. 5).  The ALJ found that, based on treatment notes and school records, Claimant does not experience "marked" limitations in two of the broad categories of functioning or "extreme" limitation in one broad category of functioning.  (R. 426R-U, at Finding No. 5).  After considering all of the evidence, the ALJ found that Claimant had a less than marked limitation in acquiring and

---

[2] The ALJ will find that a child has an "extreme" limitation in a domain when a child's impairment(s) "interferes very seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. 916.926a(e)(3). An extreme limitation is "more than marked" and "is the rating [given] to the worst limitations." *Id.* An "extreme" limitation, however, "does not necessarily mean a total lack or loss of ability to function." *Id.*

using information, attending and completing tasks, interacting and relating with others, moving and manipulating objects, caring for self, and health and physical well-being.  (R. 426R-U, at Finding No. 5(a)-(f)).  Thus, the ALJ ruled that Claimant is not disabled as that term is defined in the Social Security Act and that Claimant, therefore, is not entitled to a period of benefits.  (R. 426U, at Finding No. 6).

## IV.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded.  (Doc. # 9, at 4, 6).  Plaintiff's arguments focus on her contention that the ALJ erroneously found that Claimant does not meet or equal Listing 112.05D, which addresses child mental retardation.  (Doc. # 9).   In support of that claim, Plaintiff asks this court to consider three types of evidence that were *not* presented to the ALJ before his December 7, 2007 decision on remand:  (1) an April 7, 2008 Individualized Education Program for Claimant which shows eligibility for special education services (hereinafter, the "IEP"); (2) records from Riverbend Mental Health dated June 9, 2008 - July 24, 2008 which include a diagnosis of mild mental retardation (hereinafter, the "2008 Riverbend Records"); and (3) the December 28, 2007 report of registered psychometrist Tom Elliott suggesting that the I.Q. scores computed by Dr. Jon Rogers, upon which the ALJ relied in finding that Claimant did not meet Listing 112.05D, were miscalculated to Claimant's detriment (hereinafter, the "Elliott Report").  (Doc. # 9, at Exs. A-C).

Plaintiff seeks two different types of reversal and/or remand based upon the above-referenced evidence.  First, because the IEP and 2008 Riverbend Records were not submitted to either the Appeals Council or the ALJ, Plaintiff seeks remand pursuant to "Sentence Six" of 42 U.S.C. §405(g)

6

for the Commissioner to consider that evidence, which she claims is "new" and "material."  Second, Plaintiff seeks reversal and/or remand pursuant to "Sentence Four" of § 405(g) based upon the Elliott Report, which was before the Appeals Council when it denied Plaintiff's request for review of the ALJ decision and which Plaintiff claims "seriously questioned the evidence relied upon by the ALJ for his decision."  (Doc. # 9, at 3).

## V.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  see 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in

7

scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

Indeed, Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g) ("Sentence Four"). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). This court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993). This court may also remand a case to the Commissioner for a rehearing: (1) under Sentence Four of § 405(g); (2) under Sentence Six of § 405(g); or (3) under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir.1996)). It is the final option - dual remand - that is appropriate in the instant case.

**VI.    Standards Governing Each Type of Remand**

Given the unique nature of the dual remand relief to be granted in this case, the court will briefly table its analysis of the parties' arguments for a quick recapitulation of the standards governing each available type of remand. First, to remand under Sentence Four, the district court must either find that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090-91 (finding that remand was appropriate where ALJ failed to develop a full and fair record of

claimant's residual functional capacity); *Davis*, 985 F.2d at 534 (holding that remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards). Where the district court cannot discern the basis for the Commissioner's decision, a Sentence Four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 830 (11th Cir.1984) (finding that remand was appropriate to allow ALJ to explain the basis of his decision).

A Sentence Four remand may also be appropriate when "[new] evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record." *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). In such a case, the district court must consider whether that new evidence[3] renders the denial of benefits erroneous. *Ingram*, 496 F.3d at 1269. If the case is due to be remanded under Sentence Four, the ALJ on remand should review the case on a complete record, including any new and material evidence. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir.1983) (requiring the ALJ to consider, on remand, a psychiatric report submitted to the Appeals Council and finding the court may at any time order additional evidence to be taken before the Secretary upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative

---

[3] "A reviewing court is limited to the certified administrative record in examining the evidence [in a Sentence Four remand]." *Caulder v. Bowen*, 791 F.2d 872, 875-77 (11th Cir. 1986).

examination when warranted). After a Sentence Four remand, the district court enters a final and appealable judgment immediately and then loses jurisdiction. *Jackson*, 99 F.3d at1095.[4]

By contrast, the second option - a Sentence Six remand - may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. Sentence Six of § 405(g) provides:

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g) ("Sentence Six"). To remand under Sentence Six, the claimant must establish: (1) that there is new, non-cumulative evidence;  (2) that the evidence is material, *i.e.*, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) that there is good cause for failure to submit the evidence at the administrative level.  *Jackson,* 99 F.3d at 1090-1092; *see also Keeton*, 21 F.3d at 1068. With a Sentence Six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *Jackson*, 99 F.3d at 1095.[5]

---

[4] Because a Sentence Four remand has been construed to be a final and appealable order, *Sullivan v. Finkelstein*, 496 U.S. 617, 625-26 (1990), "a judgment of remand on sentence-four grounds is a final judgment under the EAJA, and it usually starts the EAJA attorney's fees application filing period running," *Jackson*, 99 F.3d at 1095.

[5] "Thus, unlike a [S]entence [F]our remand, a [S]entence [S]ix remand is not a final judgment under the EAJA, and the window for filing an EAJA fee application does not open until judgment is entered in the district court following completion of the remand proceedings." *Jackson*, 99 F.3d at 1095.

Finally, the Eleventh Circuit has held that a third type of remand - a dual remand pursuant to both Sentence Four and Sentence Six - is permissible. *Jackson*, 99 F.3d at 1090.

> In such a case, jurisdiction continues despite the entry of judgment remanding the case, because the [S]entence [S]ix part of the remand requires the parties to return to district court. . . Moreover, the judgment remanding the case need not constitute the final judgment for EAJA purposes, because after the remand proceedings the parties must return to court, and the court must enter another judgment terminating the case insofar as it concerns the [S]entence [S]ix remand grounds.

*Jackson*, 99 F.3d at 1096-97. "If a claimant achieves a remand on both . . . grounds, and thereafter succeeds on remand in part due to the [S]entence [S]ix ground, the claimant may return to district court to request entry of judgment after remand proceedings have been completed. . . . [and] may wait until the post-remand judgment is entered before filing his EAJA application." *Jackson*, 99 F.3d at 1096-97.

## VII.   Discussion

Against that backdrop of applicable standards, the court will outline the reasons why it has been persuaded to remand this case pursuant to *both* Sentence Four and Sentence Six of § 405(g). Both of Plaintiff's remand arguments center on her contention that Claimant's impairments meet or medically or functionally equal Listing 112.05D, a subset of the 112.05 listing category for child mental retardation.  Notably:

> The structure of the listings for Mental Retardation (112.05) ... is different from that of the other mental disorders. Listing 112.05 (Mental Retardation) contains six sets of criteria. If an impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the six sets of criteria, we will find that the child's impairment meets the listing.

20 C.F.R. 404, Subpt P, App. 1. 20 CFR Pt. 404, Subpt. P, App. 1 (emphasis added).[6]  Accordingly,

---

[6] "The essential feature of Mental Retardation is significantly subaverage general intellectual functioning ... accompanied by significant limitations in adaptive functioning...." THE DIAGNOSTIC

an individual child meets Listing 112.05D if she satisfies *both*: (1) the diagnostic description in the introductory paragraph, which requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning;" (2) and one of the six criteria, which in this case is section "D" requiring, "[a] valid verbal, performance or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant limitation of function[7]." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.05.[8]   When an individual claims she has an impairment which meets

---

AND STATISTICAL MANUAL OF MENTAL DISORDERS OF THE AMERICAN PSYCHIATRIC ASSOCIATION, 39 (4th ed.1994)(DSM-IV).

[7] With respect to the "other impairment" requirement, the regulations further provide that:

[f]or listings 112.05D and 112.05F, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it causes more than minimal functional limitations, *i.e.*, is a "severe" impairment(s), as defined in [20 C.F.R.] § 416.924(a). If the additional impairment(s) does not cause limitations that are "severe" as defined in § 416.924(C), we will not find that the additional impairment(s) imposes an additional and significant limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00A. Under 20 C.F.R. § 416.924(a), an impairment will be found not severe if it is a slight abnormality, or combination of slight abnormalities, that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(a).

In this case, the ALJ on remand found that Claimant met the "other impairment" requirement of Listing 112.05D when he found that she had a severe combination of impairments of Soto's Syndrome, ADHD, and borderline intellectual functioning. (R. 426J, at Finding No. 3). The Commissioner does not dispute that Claimant has satisfied this portion of the Listing. (Doc. # 11, at 6).

[8] As the Eleventh Circuit recently explained in an unpublished opinion regarding Listing 12.05 (the adult equivalent of the child Listing 112.05):

We have determined that, to be considered for disability benefits under Listing 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive functioning; and (3) have manifested deficits in adaptive behavior before age 22. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir.1997). In addition, for presumptive disability under 12.05C, the claimant must have (1) a valid I.Q. score of 60 through 70 inclusive, and (2) an additional mental or physical impairment significantly affecting the claimant's ability to work. *Id.* at

a listed impairment, she "must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative [s]he contends that [s]he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency." *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir.1986).

As noted earlier, in support of her arguments that Claimant meets and/or equals Listing 112.05D, Plaintiff asks this court to consider three types of evidence that were *not* presented to the ALJ before his December 7, 2007 decision on remand:  (1) the April 7, 2008 IEP; (2) the 2008 Riverbend Records; and (3) the December 28, 2007 Elliott Report.  (Doc. # 9, at Exs. A-C).  The court's analysis of whether any of the evidence listed above warrants remand must be conducted under different provisions of § 405(g).  Because neither the IEP nor the 2008 Riverbend Records were submitted to the Appeals Council but were first presented to this court, the court's analysis necessarily falls under Sentence Six of § 405(g).  The Elliott Report, however, was submitted to the Appeals Council prior to its denial of the request for review, and therefore it is appropriately considered under Sentence Four of § 405(g).[9]

---

1219-1220.

*Pettus v. Astrue*, 226 Fed.Appx. 946, 948 (11th Cir. 2007).

[9] Although the parties' briefs indicate some confusion as to whether the Elliott Report was submitted to the Appeals Council, the record indicates that it was.  In her first brief, Plaintiff suggests that the Elliott Report was omitted from the administrative record.  (Doc. # 9, at 2)("Exceptions to the second ALJ [opinion] were filed [along with the Elliott Report] with the Appeals Council on January 7, 2008.  However the *Letter of Exceptions* does not appear in the record.")(emphasis in original).  Apparently without independently reviewing the record, the Commissioner agreed with Plaintiff and argued that because "as Plaintiff noted . . . the A[ppeals] C[ouncil] evidently did not make Mr. Elliott's letter part of the record," this court should evaluate the Elliott Report under Sentence Six - not Sentence Four - because it was not "previously

B.      Sentence Six Remand:   the IEP and the 2008 Riverbend Records

The court's substantive analysis begins with the matter of whether the IEP and/or the 2008

Riverbend Records warrant a Sentence Six remand to the Commissioner for consideration of new

evidence.  This Circuit has made clear that "'not every discovery of new evidence, even if relevant

and probative, will justify a remand to the Secretary, for some evidence is of limited value and

insufficient to justify the administrative costs and delay of a new hearing.'"  *Caulder v. Bowen,*  791

F.2d 872, 876-77 (11th Cir. 1986) (*quoting Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981)).

Accordingly, pursuant to the standard first articulated in *Cherry v. Heckler*, 760 F.2d 1186 (11th

Cir.1985), a claimant seeking a Sentence Six remand must establish that: (1) there is new,

---

incorporated into the record, . . . [and thus should] be treated as if it were first presented to this
Court." (Doc. # 11, at 15-16).  By the time Plaintiff filed her reply brief, however, she had located
the Elliott Report in the administrative record - under the heading "exhibits" and labeled as "AC-2."
(Doc. #  12, at 4)("Finally, attached to Plaintiff's original brief, the undersigned submitted a copy
of a letter brief to the Appeals Council dated January 7, 2008, along a copy of letter from Thomas
Elliott.[] This was done because these documents are not listed in the table of contents in the
certified record. However, these documents have been located and are in the record at pages
486-490. Counsel apologizes for any confusion that this oversight caused.").

It is not surprising to this court that the parties had some difficulty ascertaining whether the
Appeals Council received the Elliott Report before rendering their decision on Plaintiff's request for
review -- the Appeals Council's denial of review contains *no* mention of any additional evidence
submitted to it and indeed cites to Dr. Rogers' I.Q. scores without any reference to the possibility that
those scores were improperly calculated, as Elliott suggests.  (R. 426A).  But, there can be no doubt
that the Elliott Report was made part of the administrative record after it was sent to the Appeals
Council -- the Report, along with Plaintiff's counsel's letter to the Appeals Council, can be found on
pages 486-90 of the certified record with the label "AC-2."  (R. 486-90).

As noted earlier, a Sentence Four remand, as opposed to a Sentence Six remand, is
appropriate when "evidence properly presented to the Appeals Council . . . is part of the
administrative record." *Ingram*, 496 F.3d at 1269; *see also Keeton*, 21 F.3d at 1067 (noting that when
evidence is submitted for the first time to the Appeals Council, that new evidence becomes part of
the administrative record). Thus, this evidence is properly analyzed pursuant to Sentence Four, not
Sentence Six.  That the Appeals Council failed to even generally refer to the Elliott Report in its
denial of review bears on the matter of whether it meaningfully *considered* the evidence, which will
be discussed *infra* Section VII.C.2., not on the matter of whether the evidence was *received* as part
of the record, because the certified record indicates that it was.

noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level.  *Cherry*, 760 F.2d at 1192.

That both the IEP (dated April 7, 2008) and the 2008 Riverbend Records (with various dates from June 9, 2008 to July 24, 2008) are "new" and "noncumulative" evidence is not disputed. Moreover, the court finds, and the Commissioner has not meaningfully disputed, that Plaintiff has demonstrated "good cause for failing to present the evidence at the administrative level" because "the evidence did not exist at the time of the administrative proceeding." *Cherry*, 760 F.2d at 1192. Thus, the court's analysis focuses on the matter of materiality, *i.e.,* whether the evidence is relevant and probative so that there is a reasonable possibility that it would change the administrative result. *Cherry*, 760 F.2d at 1192.

First, the court finds that the April 2008 IEP is material because it demonstrates Claimant's eligibility for special education services - which is a changed circumstance from the facts relied on by the ALJ when he determined that Claimant failed to meet Listing 112.05D.  As the ALJ noted in his December 2007 decision when analyzing the applicability of the mental retardation listings, "school records indicate the claimant has never been in special education or been considered mentally retarded, although she has gotten additional help in the classroom setting." (R. 426K, at Finding No. 4).  Indeed, the ALJ considered Claimant's lack of eligibility for special education so important to his analysis, that he specifically held the record open "for the representative to obtain any reports stemming from additional special education testing the claimant's mother reported [at the October 2007 hearing on remand] the school planned to do." (R. 426K, at Finding No. 4).  Unfortunately, however, the timing of the additional testing did not precede the ALJ's decision. (*See* R. 426K, at

Finding No. 4)(noting that "the mother was mistaken and the school planned no additional testing until February 2008); Doc. # 9-3, Ex. B (noting that Claimant "qualified to receive special education services in March of [2008]").  There can be no doubt that the ALJ considered Claimant's special education status to be significant in his analysis of Listing 112.05D.

The Appeals Council's denial of review also devoted a portion of its brief explanation of "Why We Are Taking This Action" to evidence before the ALJ that "claimant was not in special education classes," indicating that it too found Claimant's lack of special education eligibility to be significant to its finding that "the entire record upon remand supports the conclusion that the claimant was not disabled in the critical period." (R. 426A).  That both the ALJ and the Appeals Council made specific reference in their opinions to Claimant's lack of eligibility for special education services is indicative of the IEP's materiality.

Second, the court finds that the 2008 Riverbend Records also warrant a Sentence Six remand because they include the diagnosis of child and adolescent psychiatrist Dr. Anas Alkhatib that Claimant has "mild mental retardation," in addition to Dr. Alkhatib's documentation of Claimant's other mental impairments which impose additional and significant limitations of function -- both of which bear upon the ALJ's analysis of whether Claimant satisfies Listing 112.05D.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 1987)(emphasizing that in order to meet a listing, a claimant "must have a diagnosis included in the Listings").  Although the Commissioner apparently admits that the new diagnosis of mental retardation would be material to the ALJ's analysis of Listing 112.05K, the Commissioner questions the legitimacy of Dr. Alkhatib's diagnosis, arguing "[o]stensibly, the diagnosis of mild mental retardation is based on the I.Q. score Plaintiff's mother

16

reported . . . . [instead of being] based on valid IQ testing . . . [by an] acceptable medical source."
(Doc. # 11, at 20).

Despite the Commissioner's implication, Dr. Alkhatib's observations in the 2008 Riverbend Records provide *no* direct reasoning for his Axis II diagnosis of mild mental retardation. (Doc. # 9-4, at 4, 5).  Indeed, although the Records do indicate that Claimant's mother (Plaintiff in this case) reported to Dr. Alkhatib Claimant's full scale I.Q. score of 69, which could have served as the basis for his diagnosis, it is just as likely that evidence of Claimant's impairments in adaptive functioning resulting from her affliction with Soto's syndrome served as the basis for his diagnosis.  *See* American Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 42 (4th ed. Rev. 2000) (DSM-IV-TR) ("Impairments in adaptive functioning, rather than a low I.Q., are usually the presenting symptoms in individuals with Mental Retardation.")); *see also* Sotos Syndrome Information Page; National Institute of Neurological Disorders and Stroke: www.ninds.nih.gov/disorders/sotos/sotos.htm (noting that mild mental retardation is frequently associated with Soto's Syndrome).  In the absence of any articulated reasoning for Dr. Alkhatib's diagnosis, this court will not assume that his diagnosis is invalid based on the Commissioner's "ostensible" assertion.[10]

Thus, because Plaintiff has shown that the IEP and the 2008 Riverbend Records are new, material evidence for which good cause exists for her failure to present them during the administrative phase, it is appropriate to remand this case pursuant to Sentence Six to allow the Commissioner to consider them.

_____

[10] The Commissioner's choice of the adverb "ostensibly" is certainly appropriate:  it means "apparently true, but not necessarily so."  THE OXFORD ENGLISH DICTIONARY (2nd ed. 1989) OED Online. Oxford University Press. 4 Apr. 2000.

C.      **Sentence Four Remand:  the Elliott Report**

As noted earlier, because the Elliott Report was properly presented to the Appeals Council,

it, unlike the IEP and 2008 Riverbend Records, is appropriately analyzed under Sentence Four of §

405(g).  *Ingram*, 496 F.3d at 1262.  Plaintiff's Sentence Four argument centers on her contention that

"the Appeals Council committed an error of law by declining jurisdiction where there was evidence

before the Appeals Council [in the form of the Elliott Report] that the ALJ's decision was based on

[an] erroneous [I.Q.] test report."  (Doc. # 9, at 4).  Plaintiff contends that, had the Appeals Council

properly considered the Elliott Report, it would have granted review on the ALJ's conclusion that she

failed to satisfy the requirements of Listing 112.05D.  (Doc. # 9, at 3-4).

Specifically, Plaintiff notes that the Elliott Report highlights an addition error made by Dr.

Jon Rogers when he calculated one of Claimant's I.Q. subtest scores, upon which the ALJ relied in

finding that Claimant did not meet Listing 112.05D -- an error that Elliott claims falsely elevated her

scores beyond the threshold required for Listing 112.05D. (Doc. # 9, at 4).  Plaintiff contends that

proper calculation of Claimant's scores would have resulted in a perceptual reasoning/performance

I.Q. score[11] of 69, instead of the 71 that Dr. Rogers reported, which would have satisfied Listing

112.05D's requirement of "[a] valid verbal, *performance* or full scale I.Q. of 60 through 70."  20

C.F.R. Part 404, Subpart P, Appendix 1, § 112.05 (emphasis added).  It is undisputed that the ALJ

---

[11] According to Elliott, the perceptual reasoning index I.Q. score from Dr. Rogers' WISC-IV testing is equivalent to what was formerly termed the "performance I.Q." score in the previous generation WISC III test.  (R. 490).  For the sake of clarity, the court will refer to the score using both terms (the "perceptual reasoning/performance I.Q. score").

relied upon Dr. Rogers' test scores as the only valid scores available at the time of his December 2007 decision on remand. (R. 426J-K, at Finding No. 4).[12]

The Commissioner responds that remand is inappropriate because the Elliott Report does not establish a basis upon which to overturn the ALJ's decision, and thus the Appeals Council's denial of review was not erroneous. Specifically, the Commissioner argues that there is no reasonable possibility that the Elliott Report would change the ALJ's finding that Plaintiff has not met or equaled Listing 112.05D because: (1) the Elliott Report does not contain valid I.Q. scores from an acceptable medical source showing an I.Q. of 60 through 70; (2) Claimant has not satisfied the diagnostic description of mental retardation because there is no diagnosis of mental retardation supported by valid I.Q. testing; and (3) Claimant has not shown that she experienced significant subaverage general intellectual functioning accompanied by deficits in adaptive functioning. (Doc. # 11, at 6-16).

### 1.     The Nature of Plaintiff's Challenge and the Applicable Law

It is important to note that Plaintiff's Sentence Four argument is aimed at the Appeals Council's denial of review after receipt of the Elliott Report, which called into question the ALJ's decision; it is not a *direct* challenge of the ALJ's decision-making. Because the ALJ never had the opportunity to review the Elliott Report to ascertain whether Dr. Rogers' scores were accurate, Plaintiff's challenge can only be a challenge to the *Appeals Council's* determination that the ALJ decision was correct and did not warrant review. *See* Doc. # 9, at 4 ("Because the ALJ relied on the

---

[12] The only other IQ score of record was obtained in October 2004, (R. 321), and the parties agree that the October 2004 score was only valid until October 2006, (R. 426J; Doc. # 9, at 3; 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00D.10 (stating that IQ tests obtained between ages seven and sixteen are current for only two years if the IQ is 40 or above)).

erroneous test results reported by Dr. Rogers to reach his conclusion, the decision is not supported by substantial evidence.").

There has existed some confusion in the courts of this Circuit as to the appropriate role of a district court in reviewing the decision of the Appeals Council to deny review, and even whether that decision can be reviewed at all. *Ingram*, 496 F.3d at 1266 (collecting cases). The Eleventh Circuit's opinion in *Ingram* provides clarity on this matter, reiterating the settled law of this Circuit that a court may review, under Sentence Four of § 405(g), a denial of review by the Appeals Council. *Ingram*, 496 F.3d at 1262. Sentence Four therefore serves as the vehicle for two very different types of review. When no new evidence is presented to the Appeals Council and it denies review, then the ALJ's decision is necessarily reviewed as the final decision of the Commissioner; but, as in this case, when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous such that the Appeals Council's denial of review was improper. *Ingram*, 496 F.3d at 1262.

The regulations provide that when a claimant submits evidence to the Appeals Council after the ALJ's decision, the Appeals Council shall consider such evidence if it is "new and material" and "relates to the period on or before the date of the administrative law judge hearing decision."[13]  20 C.F.R. § 404.970(b); *see also Smith v. Social Security Administration*, 272 Fed.Appx. 789 (11th Cir. 2008). "Material" evidence is evidence that is "relevant and probative so that there is a reasonable

---

[13] Under a Sentence Four remand, unlike a Sentence Six remand, the claimant is not required to show good cause. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991) (recognizing "Congress' explicit delineation in § 405(g)" between Sentence Four and Sentence Six remands and noting that a court may remand under Sentence Six "only if the claimant shows good cause for failing to present the evidence earlier"); *Ingram*, 496 F.3d at 1258 (recognizing that we have previously "mistakenly stated that evidence first presented to the Appeals Council could be considered by the court only if the applicant had good cause for not presenting it earlier to the administrative law judge").

possibility that it would change the administrative result." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir.1987)(quotation omitted). Thus, the Appeals Council is charged with considering the entire record, including the new, material, and chronologically relevant evidence, and the Council *shall* decide to review the ALJ's decision if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).

A claimant's "Sentence Four" challenge to action taken by the Appeals Court may require "two marginally different burdens depending on whether the claimant is challenging the Appeals Council's decision not to consider new evidence under 20 C.F.R. § 404.970(b) or its decision, after evaluation of the new evidence, not to review the ALJ's decision." *Fry v. Massanari*, 209 F.Supp.2d 1246, 1252 (N.D.Ala. 2001)(Nelson, J.). First, when a claimant challenges the *adequacy* of the Appeals Council's evaluation of new evidence, the district court may properly review the new evidence to see whether it is of a type the Appeals Council should have considered, *i.e.,* whether it is "new," "material," and relates to the "period of time on or before the ALJ's hearing and decision." *Keeton*, 21 F.3d at 1067-68; *Epps v. Harris*, 624 F.2d 1267, 1272-1273 (5th Cir.1980); 20 C.F.R. § 404.970(b). "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision . . . amounts to an error of law." *Keeton*, 21 F.3d at 1066.

Second, a claimant may challenge the Appeals Council's determination, after consideration of the new evidence, that the new evidence does not warrant its review of the ALJ's decision. *See Epps*, 624 F.2d at 1273. In this situation, the district court must "determine whether the Appeals Council correctly decided that the 'administrative law judge's action, findings, or conclusion is [not] contrary to the weight of the evidence currently of record.' 20 C.F.R. § 404.970(b)." *Ingram*, 496 F.3d at 266-67. This court's review of the "weight of the evidence" must span the entire administrative

21

record, including the additional evidence submitted to the Appeals Council. *Ingram*, 496 F.3d at 1262; *Barclay v. Comm'r of Social Security*, 2008 WL 649184, at * 5 (11th Cir. March 12, 2008). In both situations, the district court's standard of review is *de novo*, and it is the role of the court to determine "whether the new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

In this case, it appears that Plaintiff has challenged *both*: (1) the adequacy of the Appeals Council's evaluation of the evidence - or more accurately, what appears to be the lack thereof; and (2) the Appeals Council's denial of review after determining that the ALJ's decision is not contrary to the weight of the evidence. (*See* Doc. # 9, at 3-5). The court will address each argument in turn.

## 2. Adequacy of Appeals Council's Consideration of the Elliott Report

Despite the fact that the certified administrative record designates the Elliott Report as exhibit "A[ppeals]C[ouncil]-2," (R. 486-90), the body of the Appeals Council's denial of review does not cite, reference, or otherwise discuss the Report, even in general terms, (R. 426A). While the Appeals Council may not need to "specifically expounded upon any evaluation it might have given the new evidence," *Fry*, 209 F.Supp.2d at 1254, most courts deem evidence to have been "considered" by the Appeals Council when the new evidence is, at the very least, generally referenced in the body of the denial of review, *see, e.g., Falge v. Apfel*, 150 F.3d 1320, 1324 n.9 (11th Cir.1998)(finding that statement that the Appeals Council considered "the reasons you disagree with the decision and the additional evidence listed" affirmatively shows that the Appeals Council considered newly submitted evidence when it denied review); *Keeton*, 21 F.3d at 1066 (same). Here, the Appeals Council's denial of review lacks even a blanket reference to consideration of new evidence, which certainly intimates

that the Elliott Report was not considered before review was denied:  "We have considered the reasons you disagree with the [ALJ's decision] and all of the issues in the case."  (R. 426A).

But even more concerning than what the Appeals Council failed to cite is what it *did* cite in support of its denial of review.  The I.Q. scores calculated by Dr. Rogers play a prominent role in the Appeals Council's denial of review -- the Council approvingly cites to Dr. Rogers' full I.Q. score result of 74 without *any* mention that the score was under scrutiny at that time or was possibly miscalculated.  (R. 426A).  That the Appeals Council placed full confidence in Dr. Rogers' scores despite Elliott's undermining thereof suggests that the Council (at worst) failed to even examine the Elliott Report, or (at  least) refused to meaningfully consider it.  Thus, "because [Plaintiff] contends that the Appeals Council chose not to even evaluate the [Elliott Report], the court finds that [she] must only establish that the [Elliott Report] is new, material, and relates to the time period on or before the ALJ rendered his decision. See 20 C.F.R. § 404.970(b)."  *Fry*, 209 F.Supp.2d at 1253.[14]

### a.      New and Relevant to Time Period

There can be no doubt that the Elliott Report is new evidence that relates back to the time period on or before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b).  Because Elliott's Report undisputedly was not submitted to the ALJ at any time, it qualifies as "new" evidence.  Moreover, the Report is relevant to the time period before the ALJ decision.  Although the December 28, 2007 Report post-dates the December 7, 2007 ALJ decision by several weeks, it contains no new testing or observations of Claimant and serves only to challenge Rogers' September 2007 testing and evaluation.  Thus, it contains opinions that relate back to the time period before the ALJ's decision.

---

[14] Even the Commissioner appears to agree that the Appeals Council failed to consider the Report.  (Doc. # 11, at 16).

It appears that the Commissioner does not dispute that the Elliott Report is both new and relevant, (Doc. # 11, at 17) (arguing only the materiality requirement), and therefore the court finds that Plaintiff has satisfied the first two parts of her burden unchallenged.

### b.      Material

As with a Sentence Six remand, the court's materiality analysis under a Sentence Four remand necessarily focuses on whether the Elliott Report is "relevant and probative so that there is a reasonable possibility that it would change the administrative outcome."  *Milano,* 809 F.2d at 766. The court finds that such a reasonable possibility exists in this case.  The Elliott Report directly contradicts the legitimacy of Dr. Rogers' I.Q. testing, upon which the ALJ principally relied and deemed to be "more accurate" than all previous I.Q. tests administered to Claimant.  (R. 426J-K).[15] Indeed, the ALJ's conclusion that Claimant failed to meet or equal not just Listing 112.05D, but *any* of the listings for mental retardation, was based upon Dr. Rogers' scores, all of which were outside of the threshold I.Q. score required by the mental retardation listings:

> Since the undersigned finds that the claimant's true intellectual functioning is reflected by the full scale I.Q. of 74 obtained by Dr. Rogers, the claimant does not have any current, valid I.Q. of 60-70, or lower, as required by any of the listings for mental retardation.

(R. 426K, at Finding No. 4).  By contrast, Elliott's recalculation of Dr. Rogers' scores would place at least one of Claimant's scores - the perceptual reasoning/performance I.Q. score of 69 - unequivocally within Listing 112.05D's requirement of "[a] valid . . . *performance* . . . I.Q. of 60 through 70."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.05.  Evidence that directly contradicts the principal

---

[15] As noted earlier, the only other IQ score of record that had been obtained in October 2004, (R. 321), was no longer valid, (R. 426J; Doc. # 9, at 3; 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00D.10).

basis for the ALJ's disability ruling certainly carries the possibility of changing the administrative outcome.

The Commissioner contends that the Appeals Council was not obligated to consider the Elliott report because, for two reasons, there is no reasonable possibility that Elliott's opinion would change Claimant's inability to meet the I.Q. requirement of Listing 112.05D. (Doc. # 11, at 7-8, 17). First, the Commissioner attempts to undermine Elliott's credibility by asserting that, as a psychometrist and not a medical doctor, Elliott is not an acceptable medical source who can conduct I.Q. testing. (Doc. # 11, at 8, 17). The Commissioner's argument misses the mark. Aside from the fact that ALJs in this district often rely upon psychometrists in general - and Elliott in particular - for I.Q. testing and psychological evaluations in disability cases,[16] Elliott did not conduct the I.Q. testing at issue in this case. Elliott merely pointed out a mathematical error in the testing conducted by someone else. His status as an "acceptable medical source" is simply not at issue here.

The court is equally unpersuaded by the Commissioner's second materiality argument which contends: even assuming Elliott is correct and Dr. Rogers' full scale I.Q. score should be 73 (with a standard error range of 69-79), 73 still does not satisfy the Listing's requirement of "60 through 70"

---

[16] As Plaintiff points out in her reply brief:

As a registered psychometrist in Alabama, Mr. Elliott is authorized to administer I.Q. testing in all the public schools in Alabama, and indeed has several contracts to do so with school systems in the Shoals area. Furthermore, Mr. Elliott is a registered medical expert with the Social Security Administration's Office of Disability Adjudication and Review in Florence, Alabama. In fact, ALJ Stout, the ALJ who made the decision in this case, has on more than one occasion called Mr. Elliott as an expert witness to interpret I.Q. testing, and indeed indicated that he might call Mr. Elliott to a supplemental hearing to interpret testing in this case. Thus, Defendant's contention that Mr. Elliot is not an acceptable medical source is without merit.

(Doc. # 12, at 2)(internal footnotes omitted).

unless the ALJ adopts the lowest standard error measure of 69, which he is not permitted to do.  (Doc. # 11, at 7-8, 17).   Regardless of whether this court can - or should - factor in the range of standard error when recalculating Claimant's *full scale* I.Q. score in accordance with Elliott's recommendation, her recalculated *perceptual reasoning/performance* I.Q. score of 69 unquestionably satisfies Listing 112.05D's requirement of "[a] valid . . . *performance* . . . I.Q. of 60 through 70" outright, without any reliance on the range of standard error.  20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(D)(9)("In cases where more than one I.Q. is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale I.Q.s are provided in the Wechsler series, the lowest of these is used in conjunction with listing 112.05.").  Because the court need not even look to Claimant's full scale score to conclude that the I.Q. requirement of Listing 112.05D is satisfied, the Commissioner's standard error range argument is inapplicable.

The potential impact of the Elliott Report on the credibility of Dr. Rogers' testing - and by extension the credibility of the ALJ's decision - is not unlike newly submitted Appeals Council evidence that was before the former Fifth Circuit in *Daniel v. Gardner*, 390 F.2d 32, 33 (5th Cir. 1968).  In *Daniel*, the ALJ had been misled by an incorrectly transcribed date in a doctor's letter which formed the basis of his denial of benefits, and after the ALJ decision was rendered, the doctor filed new evidence with the correct date in the Appeals Council. *Daniel*, 390 F.2d at 32.  Despite having before it evidence which questioned the legitimacy of the ALJ's decision, the Appeals Council denied review.  *Daniel*, 390 F.2d at 33-34.  On appeal, the former Fifth Circuit faulted the Appeals Council for not correcting the ALJ because "[t]he Appeals Council ... had the benefit of [the doctor's] subsequent report that  . . . corroborat[ed] findings of appellant's disability," and the court directed

"the district court to remand to the Commissioner to determine whether . . . the claimant met the other qualifications to be eligible for disability benefits." *Daniel*, 390 F.2d at 33-34.

Just as in *Daniel*, the evidence in this case challenges the very foundation of the ALJ's decision on remand.  "Without a doubt, then, the claimant's new evidence sheds light on many of the ALJ's misconceptions, misconceptions which unfortunately became determinative of his finding of no disability. The commissioner is blind to characterize such evidence as immaterial." *Fry*, 209 F.Supp.2d at 1254.  Because the record suggests that the Appeals Council failed to consider or evaluate the Elliott Report in the first instance, and because that evidence is new, material, and relevant to the time period, *i.e.*, that is of a type that should have been considered by the Appeals Council, the court concludes that this case should be remanded to the Commissioner for consideration thereof.  *See Daniel*, 390 F.2d at 33-34.

Alternatively, however, the court concludes that even *if* the Appeals Council did consider the Elliott Report in the first instance but nevertheless decided review of the ALJ decision was unnecessary because the decision was correct, remand to the Commissioner is still appropriate because the Appeals Council improperly concluded that the ALJ's decision is not contrary to the weight of the evidence.   The court's analysis of this alternative basis for remand under Sentence Four follows.

> **3.      Propriety of the Appeals Council's Conclusion That the ALJ's Decision Is Not Contrary to the Weight of the Evidence, Including the Elliott Report**

As the Eleventh Circuit has made clear, in determining "whether the Appeals Council correctly decided that the 'administrative law judge's action, findings, or conclusion is [not] contrary to the weight of the evidence currently of record," this court's review must span the entire

administrative record, including the additional evidence submitted to the Appeals Council.  *Ingram*,

496 F.3d at 1262, 66-67.  When the Elliott Report is included as part of the record, it becomes clear

that the ALJ's conclusion that Claimant fails to meet the requirements of Listing 112.05D is contrary

to the weight of the evidence.  As outlined earlier, Claimant meets the requirements of Listing

112.05D if she demonstrates *both*: (1) "significantly subaverage general intellectual functioning with

deficits in adaptive functioning," as required by the introductory portion of the Listing; and (2) "[a]

valid verbal, performance or full scale I.Q. of 60 through 70 and a physical or other mental

impairment imposing additional and significant limitation of function," as required by subsection D

of the Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.05 and D.

 The record indicates that the latter of the two requirements has been satisfied.  The court has

already concluded that the Elliott Report highlights a fatal miscalculation in Dr. Rogers' evidence that

renders the ALJ's finding that Claimant's I.Q. does not satisfy Listing 112.05D contrary to the great

weight of the evidence.  *See* discussion *supra* Section VII.C.2.  And the ALJ himself found that

Claimant's severe combination of impairments of Soto's Syndrome, ADHD, and borderline

intellectual functioning qualifies as an "other . . impairment imposing additional and significant

limitation of function,"  (R. 426J, at Finding No. 3), a finding the Commissioner does not dispute,

(Doc. # 11, at 6).  Thus, both sub-parts of the latter requirement have been met.

 It therefore would seem that the court need only evaluate whether the ALJ's finding as to the

former requirement - significantly subaverage intellectual functioning characterized by adaptive

functioning deficits - is likewise against the great weight of the evidence including the Elliott Report.

But the court cannot do that,  because there is no such finding in the ALJ's decision.  Indeed, the ALJ

never reached the question of whether Claimant had satisfied Listing 112.05's general introductory

requirement because he found that Claimant had not satisfied one particular aspect of subsection D of the Listing -- her I.Q. did not fall within the applicable range:

> The specific reason that this case was remanded was because the August 2005 decision failed to mention an I.Q. of 69 . . . and consequently did not address whether listing 112.05D was met and/or equaled . . . . Since the undersigned finds that the claimant's true intellectual functioning is reflected by the full scale I.Q. of 74 obtained by Dr. Rogers, the claimant does not have any current, valid I.Q. of 60-70, or lower, as required by [Listing 112.05D or] any of the listings for mental retardation.

(R. 426J-K, at Finding No. 4).  As such, this court cannot review the ALJ's finding regarding Claimant's inability to meet the introductory requirement of Listing 112.05D because it does not exist.

Accordingly, although *both parties* devote a significant portion of their briefs regurgitating "substantial" evidence from the record supporting or confuting (respectively) whether Claimant demonstrated deficits in adaptive functioning, (Doc. # 11, at 11-15; Doc. # 12, at 2-3), that analysis is simply not relevant here. While that inquiry would be appropriate if this court was positioned to review the ALJ's finding regarding Claimant's adaptive functioning to determine if substantial evidence supports that finding, this court cannot conduct that analysis because the ALJ never reached that part of Listing 112.05D in his analysis.  There is no finding to review.  Although some of the record evidence supports the Commissioner's contention that Claimant lacked deficits in adaptive functioning, as much - if not more - of the evidence suggests the contrary.    In a case such as this - where the ALJ has not weighed the evidence to make a finding in the first instance and where each party's argument finds merit in the record evidence - this court will not substitute its judgment for that of the Commissioner.[17]   *Martin*, 894 F.2d at 1529.

---

[17] As noted by Judge Proctor in this court's first remand order,  "[a]lthough some of the ALJ's specific findings in his evaluation of the evidence *potentially* relate to whether or not Claimant demonstrates 'deficits in adaptive functioning,' the court is concerned that he did not consider this

Because the ALJ's analysis regarding Listing 112.05D is not complete, and thus cannot be reviewed in its entirety, this is not a case where "wholesale reversal" and award is appropriate. *Fry*, 209 F. Supp.2d at 1254.  The ALJ has not yet made a determination as to whether Claimant has met the other qualifications of Listing 112.05D, and therefore "remand to the Commissioner [is appropriate] to determine whether . . . [C]laimant met the other qualifications to be eligible for disability benefits."[18]  *Daniel*, 390 F.2d at 34; *see also Neal M. Hughes v. Commissioner of Social*

---

evidence *in conjunction with* her lowered intellectual functioning as demonstrated by her I.Q. scores." *Holyfield v. Social Security Administration, Commissioner*, 3:06-cv-444-RDP)(Doc. # 14, at 11)(emphasis added).  The same concern exists with respect to the second ALJ opinion, which again failed to  directly address the Listing 112.05 requirement of deficits in adaptive functioning, (R. 426J-K, at Finding No. 4), but nevertheless outlined evidence *potentially* relevant to that requirement, (R. 426K-R), when evaluating the credibility of Claimant's complaints in light of the six domains, (R. 426K-U, at Finding No. 5).

Indeed, close scrutiny of the Commissioner's "evidence" offered in support of its argument that Claimant fails to "*meet*[] listing 112.05D because she has also failed to provide evidence of deficits in adaptive functioning," (Doc. # 11, at 11), reveals that "evidence" to be plucked entirely from the ALJ's evaluation of the credibility of Claimant's complaints in light of the six domains, (Doc. # 11, at 11-15)(citing R. 426N-R).  The Commissioner has not cited to the ALJ's evaluation of the evidence regarding Claimant's adaptive functioning deficits for a very simple reason -- it does not exist.

[18]  Although the Commissioner also contends that, even apart from deficits in adaptive functioning, Claimant cannot satisfy the Listing's introductory diagnostic requirement because she has never officially been diagnosed with mental retardation, (Doc. # 11, at 9) (citing  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 1987)(emphasizing that in order to meet a listing, a claimant "must have a diagnosis included in the Listings")), this court will not substitute its judgment for that of the Commissioner on this matter either for the same reasons explained above.

Moreover, the new evidence that will be before the Commissioner after this remand is relevant to the diagnostic requirement of Listing 112.05D, and this court will not presuppose how the ALJ will analyze that evidence.  First, the Sentence Six remand will put new evidence before the ALJ that contains a diagnosis of "mild mental retardation."  (*See* Doc. # 9, at Ex. C and discussion Section VII.B, *supra*).  Moreover, the possibility that Dr. Rogers' I.Q. scores were miscalculated undermines the basis for his diagnosis of Claimant with "borderline intellectual functioning" rather than "mental retardation." (R. 451).  It is certainly possible that recalculated I.Q. scores will affect Dr. Rogers' ultimate diagnosis.  Finally, the adaptive functioning inquiry - which has yet to be conducted by the ALJ - also bears upon whether Claimant suffers from "mental retardation" or the lesser form of "borderline intellectual functioning."  Claimant's functionality and her ultimate

*Security*, 3:07-cv-00613-JHH, Doc. # 15 (September 23, 2008), at 7-11 ("[G]iven the lack of clarity

in the ALJ's decision, and considering the amount of record evidence related to Listing 14.08 that

must be analyzed in the context of that Listing's requirements, the court is left with no choice but to

remand this case with instructions to evaluate whether Plaintiff satisfies the requirements of Listing

14.08, including procuring additional medical expert testimony, if necessary, to determine whether

this Listing is met or equaled.").

It has not escaped the undersigned's attention that the ALJ's failure to make a finding as to

whether Claimant has established the introductory requirements of Listing 112.05 *was also an issue

in the first ALJ opinion  prior to this court's initial remand*.  After noting the potential applicability

of Listing 112.05D to Claimant's impairments, Judge Proctor stated:

> Although the ALJ did not mention Claimant's score in his opinion, Claimant had
> received an I.Q. score of 69 on September 22, September 30, and October 6, 2004,
> in tests administered by the University of Alabama at Birmingham's Multi-Disability
> Clinic.  (Tr. 320).  *The ALJ additionally did not directly address whether or not
> Claimant satisfied the "adaptive functioning" requirement contained in the
> introductory paragraph of Listing 112.05. . . .Therefore, the court will reverse and
> remand for the ALJ to consider* evidence on the issue of whether Claimant should be
> considered presumptively disabled due to mental retardation as defined in Listing
> 112.05D, *i.e.*, *whether Claimant meets the "adaptive functioning" requirement* and
> whether her ADHD, Soto's Syndrome, or arthralgia diagnoses properly qualify as
> some other "physical or mental impairment imposing an additional and significant
> limitation of function."

---

diagnosis are interrelated inquiries:  accepted medical standards recognize that a diagnosis of mental
retardation must be based on deficits in adaptive functioning as well as I.Q. scores.  DSM-IV-TR,
at 42 ("Mental Retardation would not be diagnosed in an individual with an I.Q. lower than 70 if
there are no significant deficits or impairments in adaptive functioning. . . . Impairments in adaptive
functioning, rather than a low I.Q., are usually the presenting symptoms in individuals with Mental
Retardation.").  All of these are matters for the Commissioner, not this court, to decide in the first
instance.

*Holyfield v. Social Security Administration, Commissioner*, 3:06-cv-444-RDP)(Doc. # 14, at 10) (emphasis added).  Given the clarity of Judge Proctor's instructions on remand the first time, it is certainly ironic that the very same omission by the ALJ now serves (as least partially) as the basis for remand the second time around.

Based upon the court's evaluation of the evidence in the record before the Appeals Council, the court is satisfied that, regardless of whether the Appeals Council meaningfully considered the Elliott Report, it should have, because the Report calls into question the validity of the ALJ's decision. Therefore, the decision of the Appeals Council denying review is subject to remand pursuant to Sentence Four for proper consideration of the evidence. "Upon remand, the commissioner should ensure that the Appeals Council affords the Elliott Report the weight it properly deserves before concluding that the ALJ's decision is beyond reproach."  *Fry*, 209 F. Supp.2d at 1254.

## VIII.  Conclusion

For all of the reasons articulated above, this case is due to be remanded pursuant to both Sentence Four and Sentence Six of § 405(g), and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the ___20th___ day of July, 2009.

_____

SENIOR UNITED STATES DISTRICT JUDGE